**UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION v. DELAWARE COUNTY, PA.**

**SAME v. SCHOOL DIST. OF TINICUM TP., PA.**

(Circuit Court of Appeals, Third Circuit. January 11, 1927.)

Nos. 3525, 3526.

1. **Taxation** ⬤⟹5—**Property held by Shipping Board Emergency Fleet Corporation for benefit of United States is immune from state taxation.**

Property held by the United States Shipping Board Emergency Fleet Corporation for the benefit of the United States is immune from taxation by state.

2. **Taxation** ⬤⟹79—**Taxes are determinable by ownership.**

Taxes are determinable by ownership, and not by location of legal title.

Woolley, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Separate actions by the Delaware County, Pa., and by the School District of Tinicum Township, Pa., against the United States Shipping Board Emergency Fleet Corporation. Judgments for plaintiffs, and defendant separately brings error. Reversed.

Paul W. Knox and George W. Coles, U. S. Atty., both of Philadelphia, Pa. (I. V. McPherson, of Washington, D. C., and Chauncey G. Parker, of Newark, N. J., of counsel), for plaintiff in error.

Donald S. Edmonds and Porter, Foulkrod & McCullaoh, all of Philadelphia, Pa., for defendants in error.

Albert J. Williams, of Media, Pa., for defendant in error Delaware County.

Albert Dutton MacDade, of Chester, Pa., for defendant in error Tinicum School Dist.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. These two cases, which we dispose of as one, concern the taxation for the years 1921 and 1922 by the county of Delaware and the township of Tinicum of lands situate in the latter. The title of said lands was, at the date said taxes were levied, vested in the United States Shipping Board Emergency Fleet Corporation, hereafter called Fleet Corporation, and so remained until April 16, 1923, when they were conveyed to the United States. The questions involved are two—the first, one of fact, are these lands owned by the United States? the second, one of law, if so owned by the United States, can they be taxed by the County and Township?

On the first, the question of fact, there seems to be no question but that the lands are owned by the United States. Without entering into minor details and citing opinions so holding, we may say that the Fleet Corporation was a corporate agency created by the government for governmental work solely; that its stock, save for qualifying directors, was held by government and its entire assets furnished by it. When title to the land here in question was taken by Fleet Corporation by conveyance from the American International Corporation, payment therefor was made by the Treasurer of the United States, who accepted and paid a check drawn on him by the treasurer of the Fleet Corporation in favor of the American International Corporation. It thus appears that not only was the legal title held by a corporate agency of the United States, but that the purchase price of the land in question was paid to the purchaser by the United States. In the light of such facts, and there being no suggestion of ownership or interest elsewhere, it is clear that the real ownership of the land was and is in the United States, and that the Fleet Corporation, the holder of the title, held such title as a mere legal holder for the benefit of the United States.

[1, 2] Under such a situation two views arise—one, that the tax liability of the land is determined by the location of the title; the other, that it is determined by ownership. The first view was held by the court below, which, to use its admirably clear statement, held: "The basic fact which governs is not who is the owner of the property, but against whom has the tax been levied? It further follows that we look, not to what is commonly called the beneficial owner of the real estate, but to the person in whose name, and hence against whom, the tax has been assessed." Following that view, the court held that the taxes, having been assessed against the Fleet Corporation and the title being held by it, were collectible. The other view, namely, taxes are determinable by ownership, was held by the Circuit Court of Appeals of the Ninth Circuit in King County v. United States Shipping Board Fleet Corporation, 282 F. 950, and is there stated with equal clearness: "The taxable character of property is to be referred to the status of the real, rather than of the nominal, owner. Private property is not exempt from taxation because the government holds the legal title thereto, and by parity of reasoning nei-

ther is public property taxable because the naked legal title is in a private person."

The decision of the present case depends on which of these views shall prevail in this case. After careful consideration, we are of opinion the view of the Ninth Circuit should prevail, and in view of the reasoning of the court in that case and of that of this court in United States v. New Brunswick, 11 F. (2d) 476, where it was contended the equitable interest of the purchaser prevailed over the beneficial ownership of the United States, we deem it unnecessary to burden the record with a longer opinion.

The judgment below will therefore be reversed, and such holding is in accord with United States v. Coghlan (D. C.) 261 F. 425, U. S. Spruce Production Corp. v. Lincoln County (D. C.) 285 F. 388, and Clallam County v. United States, 263 U. S. 342, 44 S. Ct. 121, 68 L. Ed. 328, where, referring, not as here, to warships, but to war airships, the Supreme Court said: "When, as here, not only the agent was created, but all the agent's property was acquired and used, for the sole purpose of producing a weapon for the war. This is not like the case of a corporation having its own purposes, as well as those of the United States, and interested in profit on its own account. The incorporation and formal erection of a new personality was only for the convenience of the United States, to carry out its ends."

WOOLLEY, Circuit Judge (dissenting). I am constrained to dissent from the judgment of the court on a principle first declared perhaps in McCulloch v. Maryland, 4 Wheat. (17 U. S.) 316, 4 L. Ed. 579, and consistently followed ever since. In that case the Supreme Court distinguished this principle from the dominant one that federal agencies are not subject to state taxation and summarized its views in the concluding paragraphs of the opinion, thus:

"The court has bestowed on this subject its most deliberate consideration. The result is a conviction that the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government. This is, we think, the unavoidable consequence of that supremacy which the Constitution has declared. We are unanimously of opinion, that the law passed by the legislature of Maryland, imposing a tax on the Bank of the United States, is unconstitutional and void.

"This opinion does not deprive the states of any resources which they originally possessed. It does not extend to a tax paid by the real property of the bank, in common with the other real property within the state, nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution, in common with other property of the same description throughout the state. But this is a tax on the operations of the bank, and is, consequently, a tax on the operation of an instrument employed by the government of the Union to carry its powers into execution. Such a tax must be unconstitutional."

Fifty years later the Supreme Court, without disturbing in the least the two principles announced and distinguished in McCulloch v. Maryland, stated the test of the distinction in these words:

"It is, therefore, manifest that exemption of Federal agencies from State taxation is dependent, not upon the nature of the agents, or upon the mode of their constitution, or upon the fact that they are agents, but upon the effect of the tax; that is, upon the question whether the tax does in truth deprive them of power to serve the government as they were intended to serve it, or does hinder the efficient exercise of their power. A tax upon their property has no such necessary effect. It leaves them free to discharge the duties they have undertaken to perform. A tax upon their operations is a direct obstruction to the exercise of federal powers." Union P. R. Co. v. Peniston, 18 Wall. (85 U. S.) 5, 36 (21 L. Ed. 787). Last case, U. S. Fleet Corporation v. Western Union Telegraph Co. (App. D. C.) 13 F.(2d) 308.

Applying that test to the cases in hand, I think the judgments sustaining the taxes should be affirmed.