### PORT ANGELES WESTERN R. CO. v. CLALLAM COUNTY, WASH., et al.

District Court, W. D. Washington, N. D. January 3, 1930.

No. 20020.

See, also, 20 F.(2d) 202.

A. C. Shaw, of Portland, Or., and Lewis & Church, of Port Angeles, Wash. (Barthell & Rundall, of Chicago, Ill., of counsel), for plaintiff.

John M. Wilson and Frank L. Plummer, both of Port Angeles, Wash., for defendants.

NETERER, District Judge. This action is to declare illegal the taxes for the years 1927 and 1928 upon rights and interests of the plaintiff in a certain contract dated June 14, 1922, and recorded in the public records of Clallam county, executed by the United States Spruce Production Corporation, as vendor, and Fentriss, Hill et al. (Lyon, Hill & Co.), as vendees, and thereafter on May 7, 1923, assigned to the plaintiff railway company, a Delaware corporation.

The history of this property from its inception until this assignment, so far as this litigation is concerned, appears in United States v. Clallam County (D. C.) 283 F. 645, and Clallam County v. United States, 263 U. S. 341, 44 S. Ct. 121, 68 L. Ed. 328. After the decision in 283 F. 645, supra, the United States Spruce Production Corporation by contract agreed to sell to Fentriss, Hill et al. (Lyon, Hill & Co.), who in turn sold to the plaintiff the property involved, being an unfinished railway in Clallam county, Wash., with the right of way, ties, switches, etc., terminal buildings, and certain parcels of timber land, aggregating less than a thousand acres, mill site at Port Angeles, 104 acres upland and tidelands, together with buildings and structures, hotel at Port Angeles, and described equipment and appliances for installation, etc., and a memorandum agreement between the Puget Sound Mill & Timber Company, dated February 14, 1921, affecting the said railway, all for $1,000,000—$50,000 cash; $50,000 on each 31st day of December in 1923, 1924, and 1925; $75,000 on December 31, 1926, and 1927, respectively; $100,000

December 31, 1928, 1929, 1930, and 1931, inclusive; $250,000 December 31, 1932; all evidenced by promissory notes bearing interest at the rate of 2 per cent. per annum until maturity, 8 per cent. thereafter, payable annually.

The vendees agreed to establish the railroad throughout as a common carrier, also to make capital expenditure in the sum of not less than $200,000 within one year. "The vendees shall keep the properties hereunder purchased, free from any and all liens * * * either public or private * * * and shall *pay all taxes,* * * * *"* title to remain vested in the vendor until full purchase price is paid. The conveyances, transfers, etc., were placed in escrow, to be delivered upon payment of the full purchase price; vendees agree to enter into the possession, assume all costs of handling, maintenance, etc. The $200,000 capital expenditure to be invested *"to become additional security for the faithful performance of this contract by vendees,"* same to be assigned to the vendor to be returned and reconveyance executed and deposited with other escrow papers; vendees to maintain railroad in a safe, operating condition. Time is made of the essence of the contract, and, upon failure to perform the conditions, forfeiture may be declared.

The plaintiff corporation was organized for individual management, for private trade, and private profit, as its principal object. The United States has none of the stock of the company, nor any interest in its management. The plaintiff is engaged in its own business pursuant to its own views. The tax upon the plaintiff's interest in the contract would not retard, impede, burden, or control the right of the United States in its property or interfere in any manner with any interest therein. The property was sold for a stipulated commercial purpose, in the management of which the vendor has no voice, and which is divorced from all governmental relation, and one of the considerations is that the vendee must pay the taxes or forfeit its interest in the contract. The result of the $200,000 capital expenditure was not contracted to the plaintiff by the United States Spruce Production Corporation, but was assigned by the plaintiff to the United States Spruce Production Corporation as security. There is $200,000 in this contract which is not Spruce Production Corporation property, and cannot be within the claimed exemptions.

The total assessed valuation by the taxing authorities is $102,000, and the total valua-

tion, after deducting exemptions and applying percentages at which the property is being assessed, is $51,000. The $200,000 capital expenditure is commingled with the other property by agreement of the United States Spruce Production Corporation, and adds interest in and value to the contract.

The United States is not complaining; it is not a party to this action; no cloud is cast upon any property to which it has an interest, save as security. The interest of the plaintiff in the contract is property, Port Angeles Western R. Co. v. Clallam County (D. C.) 20 F.(2d) 202, and is the only property which is assessed—"the right, title and interest in and to one certain contract between the United States Spruce Production Corporation and Lyon, Hill & Company assigned to the Port Angeles Western Railroad." Section 33, c. 130, Laws Ex. Sess. 1925 of Washington.

■ The interest in the contract, being property distinct from the land itself, vendable, inheritable, it must be taxable as such by the state. See Elder v. Wood, 208 U. S. 226, 28 S. Ct. 263, 52 L. Ed. 464. See, also, Union. P. R. Co. v. Peniston, 85 U. S. (18 Wall.) 29, 21 L. Ed. 787.

■ The United States Spruce Production Corporation, as the corporate representative of the United States, had power to bind the United States to the provisions of the contract, and obviously sought to waive the exemption, if present, if that should be a necessary element, which I doubt, as said by Justice Swayne, concurring, in Union P. R. Co. v. Peniston, supra, at page 37.

■ When the property is taken from its sovereign relation and placed in private enterprise for gain, with agreement that it shall be assigned to a private corporation and operated and maintained as a common carrier for gain, the immunity has no application, especially since the tax valuation is only on one-fourth of the capital expenditure made by the plaintiff, to which the United States has no interest except as security, and no lien is created which beclouds the title of the United States. This question was not raised nor discussed in Port Angeles Western Railroad Co. v. Clallam County (D. C.) 20 F.(2d) 202, supra, and in that case the tax was assessed against the land, as was also Pacific Spruce Corporation v. Lincoln County (D. C.) 21 F.(2d) 586.

■ From all of the circumstances disclosed, it would seem that the power to tax is present. This I think is not opposed by Osborn v. United States State Bank, 22 U. S. (9 Wheat.) 738, 6 L. Ed. 204. The parties define the relation of the contract to taxes. The implied consent to tax and the provision requiring payment of the tax, the penalty of forfeiture of the contract, is significant. Power to tax is the essential of political existence, and the essence of the prosperity of the county and state. Nicol v. Ames, 173 U. S. 509, 19 S. Ct. 522, 43 L. Ed. 786. Exemptions from taxation are not favored, and any reasonable doubt is resolved in favor of the taxing power. Alaska Northern Ry. v. Seward (C. C. A.) 229 F. 667. If the right exists under the general taxing power, method and amount rest wholly within the discretionary power of the taxing authority. State v. Nelson, 36 Idaho, 713, 213 P. 358; Spencer v. Merchant, 125 U. S. 355, 8 S. Ct. 921, 31 L. Ed. 763.

■ The state has power to classify property for taxation, and by section 33, Laws of Washington, Extraordinary Session, 1925, p. 244, it provides "a contract for the purchase of real property belonging to the United States, * * * shall for purposes of taxation be considered as personal property of the person holding the same. * * *" The power to tax being present, and payment stipulated by the parties, the exercise of acknowledged power to tax may not be scrutinized by the court. The responsibility rests upon the Legislature and taxing authorities, and, if unreasonably exercised, the remedy rests with the people. Spencer v. Merchant, supra. "Any classification is permissible which has a reasonable relation to some permitted end of governmental action * * * if the classification is reasonably founded in 'the purposes and policy of taxation.'" Heisler v. Thomas Colliery Co., 260 U. S. 245, 43 S. Ct. 83, 85, 67 L. Ed. 237.

Much stress is placed by the plaintiff on Pacific Spruce Corporation v. Lincoln County, Ore., et al., supra, and affirmance by the appellate court. That case is readily distinguished from the instant case. The plaintiff was merely logging the land belonging to the United States Spruce Production Corporation and not using any of the property in commercial activity or enterprise for gain or profit, made no capital expenditure which was mingled with the property, and the tax beclouded the title of the United States. Nor is U. S. v. Clallam County (D. C.) 283 F. 645, 649, affirmed by the Supreme Court, 263 U. S. 341, 44 S. Ct. 121, 68 L. Ed. 328, in point. In that case the United States was complainant, and this court said: "The United States was acting in its own behalf through the Spruce Corporation, as a facility to expedite efficiency, and the corporation

as an entity did not function in the sense of having freedom of action or power of control."

The Supreme Court, in affirmance, 263 U. S. at page 344, 44 S. Ct. 121, 122, 68 L. Ed. 328, said: "But it may be, and in our opinion clearly is when as here not only the agent was created but all the agent's property was acquired and used, for the sole purpose of producing a weapon for the war. This is not like the case of a corporation having its own purposes as well as those of the United States and interested in profit on its own account."

In the instant case, the plaintiff corporation has its own interests, made capital expenditure for its own purposes, and is operating this railway and employing the property as a common carrier for profit on its own account, equipped by its own capital expenditure ($200,000), and the interest of which is assessed at $51,000 valuation.

It is said that, the plaintiff being a nonresident, the situs of the contract is the home of the plaintiff—Delaware. The plaintiff is a debtor and the beneficiary on performance of conditions. The situs of the debtor does not control. The United States Spruce Production Corporation, the creditor, is a Washington corporation. The situs of the contract is within the state of Washington, aside from the fact that all of the property, operating facilities, business office, activities for profit, are within the county where the tax has been assessed.

Nor is Rhode Island Trust Co. v. Doughton, 270 U. S. 69, 46 S. Ct. 256, 70 L. Ed. 475, 43 A. L. R. 1374, persuasive, since that was an inheritance transfer tax asserted by North Carolina, the situs of the executor and transferee being nonresident of the state of North Carolina.

It is obvious that the tax in issue casts no cloud upon the title of the United States, and that the plaintiff has a plain, speedy, adequate, and complete remedy at law, and that it may not maintain this action. See Stimson Timber Co. v. Mason County, 97 Wash. 205, 166 P. 251; Byram v. Thurston County, 141 Wash. 28, 251 P. 103, 252 P. 943; Drum v. University Place Water Dist. (Wash.) 281 P. 731; Boise Artesian Water Co. v. Boise City, 213 U. S. 276, 29 S. Ct. 426, 53 L. Ed. 796; Singer Sewing Machine Co. v. Benedict, 229 U. S. 481, 33 S. Ct. 942, 57 L. Ed. 1288; Dalton Adding Machine Co. v. Virginia, 236 U. S. 699, 35 S. Ct. 480, 59 L. Ed. 797; Cavanaugh v. Looney, 248 U. S. 453, 39 S. Ct. 142, 63 L. Ed. 354; United States v. Hoboken (D. C.) 29 F.(2d) 932;

Henrietta Mills Co. v. Rutherford County (C. C. A.) 32 F.(2d) 570.

The motion to dismiss is granted for both reasons.